UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PATRIOT BEVERAGES, LLC; and CPF, INC., )<br>)<br>Defendants. )<br>) | Case No. 1:24-cv-11514 |

## CONSENT DECREE

WHEREAS, Plaintiff Conservation Law Foundation ("CLF" or "Plaintiff") filed this action on June 10, 2024 against Patriot Beverages, LLC and CPF, Inc. (collectively, "Defendants");

WHEREAS, CLF is a non-profit environmental organization incorporated and headquartered in Massachusetts;

WHEREAS, Defendants own and operate a beverage manufacturing and bottling facility at 20 Harvard Road, Littleton, MA (the "Facility");

WHEREAS, CLF alleges Defendants violated the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA" or "Act"), and their National Pollutant Discharge Elimination System ("NPDES") Permit No. MA0004936, and seeks civil penalties, injunctive relief, and Plaintiff's attorneys' fees and costs of litigation;

WHEREAS, Defendants do not admit to any specific factual and legal allegations herein, except as provided in Section I: Jurisdiction and Venue, below;

WHEREAS, CLF and Defendants (collectively, the "Parties") have negotiated this Consent Decree in good faith and at arm's length, and agree that the settlement of the above-

1

captioned action (the "Action") through this Consent Decree without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving all claims in the Action;

WHEREAS, the Parties anticipate that this Consent Decree will achieve valuable public health and environmental benefits by improving water quality in the Commonwealth of Massachusetts;

WHEREAS, CLF and Defendants consent to the entry of this Consent Decree without further trial, argument, or appeal; and

WHEREAS, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") on behalf of the Attorney General for the forty-five (45) day review period mandated by the CWA.

NOW, THEREFORE, without the adjudication or admission of any issue of fact or law except as provided in Section I: Jurisdiction and Venue, below, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to enter and enforce this Consent Decree under the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue properly lies in this Court and judicial district pursuant to 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1391(b).

3.    CLF gave Defendants notice by a letter (the "Notice Letter") of the violations alleged in the Complaint more than sixty (60) days prior to commencement of this lawsuit.

2

Copies of the Notice Letter were also mailed to the Administrator of the EPA, the Regional Administrator of the EPA for Region 1, the Massachusetts Department of Environmental Protection ("MassDEP"), and the DOJ Citizen Suit Coordinator. Neither EPA nor MassDEP commenced any action prior to Plaintiff's filing of the Complaint.

4.      Solely for the purposes of this Consent Decree and the underlying Complaint, and any action to enforce this Consent Decree, Defendants consent to this Court's jurisdiction and to venue in this judicial district. Defendants further consent to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree. Except as expressly provided for herein, this Consent Decree shall not directly create any rights in or obligations of any Party other than the Parties to this Consent Decree.

5.      This Court shall retain jurisdiction over this case until the Termination Date for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI: Dispute Resolution and XV: Modification or effectuating or enforcing compliance with the terms of this Consent Decree.

## II.    APPLICABILITY

6.      Upon the Effective Date, the obligations of this Consent Decree shall apply to, and be binding upon, CLF and Defendants, and any successors or assigns.

7.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, or agents to take any actions necessary to comply with the provisions of this Consent Decree.

8.      Payments made pursuant to this Consent Decree shall not be tax deductible by Defendants, any successors, assigns, parent companies, affiliated entities.

3

9.      This Consent Decree shall take effect and become binding on the Parties only upon its entry by the Court without substantive modification.

### III.   DEFINITIONS

10.     Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated by EPA or MassDEP pursuant to the Act shall have the meanings assigned to them in the Act or such regulations unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "CD": This Consent Decree.

b.      "Effective Date": The date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's Docket.

c.      "Implementing Organization(s)": Each of the third-party entity(s), OARS, Inc., implementing the Environmentally Beneficial Projects described in Exhibit A of this Consent Decree.

d.      "Termination Date": The Date on which the Consent Decree term ends, which is five (5) years after the Effective Date.

11.     All references to a duration of "day" shall be calendar days unless otherwise specified. In computing any period of time under the Consent Decree, where the last day would fall on a Saturday, Sunday, federal holiday, or Massachusetts state holiday, the period shall run until the close of business of the next business day.

### IV.   COMPLIANCE MEASURES

9.      Defendants shall comply with NPDES Permit No. MA0004936, the CWA, applicable CWA regulations, and State Surface Water Quality Standards. If the NPDES Permit is

4

renewed, modified, or revised, Defendants shall comply with the conditions of any renewed, modified, or revised NPDES Permit. Defendants shall send CLF a copy of any renewed, modified, or revised NPDES Permit within fourteen (14) days of receiving it.

10. Defendants shall achieve and shall for the term of this CD maintain compliance with all NPDES Permit numerical effluent limitations, including the limitations for phosphorus, total suspended solids, pH, biochemical oxygen demand, temperature, and aluminum.

11. Within one year of the Effective Date of this CD, Defendants shall design and construct infrastructure improvements as necessary to achieve compliance with the NPDES Permit's numerical and narrative effluent limitations and State Surface Water Quality Standards (including improvements to prevent excess phosphorus, excess total suspended solids, excess pH, excess biochemical oxygen demand, excess temperature, excess aluminum, oil and grease, foam and floating solids, discoloration, and odors in their wastewater and stormwater discharges), including measures described below.

12. Within sixty (60) days of the Effective Date of this CD, Defendants shall perform an audit of the Facility and its operations with respect to CWA compliance.

13. Within sixty (60) days of the Effective Date of this CD, Defendants shall purchase new testing equipment for the Facility's in-house laboratory.

14. Within sixty (60) days of the Effective Date of this CD, Defendants shall add sand filter automatic backflushing to the Facility's SCADA system operations and upgrade controls to support the automatic backflushing.

15. During the negotiation of this CD, the Parties agreed to certain compliance measures and in good faith Defendants began implementing certain of those measures before the

5

Effective Date. For the avoidance of doubt, Defendants agree to continue performing or implementing the following compliance measures on the Effective Date of this CD:

a. Defendants shall continue their increased phosphorus and aluminum testing.

b. Defendants shall continue implementing changes in phosphorus removal chemicals and micronutrients used in operations.

c. Defendants shall continue using their new injection system with the addition of ferric compounds.

d. Defendants shall continue using new water cooling equipment to ensure that effluent water temperatures comply with the Permit.

e. Defendants shall continue using upgraded screening on influent to improve quality.

f. Defendants shall continue implementing new protocols for daily data monitoring, including sharing such data with the Facility's Plant Director and General Manager.

g. Defendants shall continue performing Discharge Monitoring Report reviews with the Facility's plant director.

h. Defendants shall continue implementing staffing changes to ensure greater plant oversight.

i. Defendants shall continue conducting monthly surveys of the Facility to ensure that uncovered manufacturing products or waste are not stored outside. A "monthly survey" is defined as a report created on the first business day following the last day of each month to document the results of that month's daily walk-throughs of the

6

Facility during business hours, Monday–Friday (excluding holidays and days on which the Facility is closed) to check for uncovered manufacturing products or waste outside.

j.      Defendants shall continue to implement modifications to their Best Management Practices and control measures in the Facility's Stormwater Pollution Prevention to ensure that stormwater discharges comply with the effluent limitations in the NPDES Permit (including improvements to prevent the exposure of manufacturing materials and waste to precipitation).

16.    On the Effective Date of this CD, Defendants shall begin and continue to take and document corrective action after violations of stormwater effluent limitations pursuant to Permit § I.C.4.

17.    As of the Effective Date of this CD, Defendants have also audited clarifier and sand filtration operations.

18.    In the event that Defendants fail to comply with any of their obligations under this Section IV, Defendants shall pay supplemental payments as outlined in Section VII: Supplemental Payments.

## V.    COMPLIANCE MONITORING

19.    Defendants shall comply with all inspection, monitoring, and reporting requirements set forth in the regulations of EPA and the NPDES Permit, including the requirements in Sections I.A–E of the Permit, such as conducting monthly discharge monitoring for each parameter at each Outfall. Additionally, Defendants shall monitor and report the monthly off-site wastewater treated in their treatment system.

20.    During the term of this CD, Defendants shall send to CLF their monthly Discharge Monitoring Reports and any associated data or correspondence (including the results

7

of the monthly surveys to ensure there are no uncovered manufacturing products or waste stored outside) no later than 15 days after submittal to EPA.

21.     During the term of this CD, CLF, through representatives, may conduct up to two (2) site inspections at the Facility after the improvements described in Section IV: Compliance Measures have been implemented, provided that CLF gives at least forty-eight (48) hours' notice in advance of each site inspection, and that such inspection occurs during normal business hours.

      a.     During each site inspection, the CLF representative(s) may enter the Facility, inspect all wastewater and stormwater infrastructure (including treatment, control, drainage, and other systems), collect water and soil samples, take photos and video of the Facility subject to the limitations below, speak with relevant Facility staff, and monitor compliance with the NPDES Permit and the CD. CLF may take photos or videos of the outside of the Facility. CLF may take photos or videos of interior portions of the Facility that reflect water flows covered by the NPDES permit, and that are related to the wastewater treatment plant on the site. CLF may not take photos or videos of manufacturing processes at the Facility.

      b.     CLF agrees to keep photos and video footage confidential and use such materials solely to determine Defendants' compliance with the NPDES Permit and CD, to not distribute or reproduce it to any third party, and to return such photos and video footage to Patriot within thirty (30) days of the end of the term of this Consent Decree

22.     During the life of this CD, Defendants shall copy CLF on all documents related to water quality or CWA compliance regarding the Facility submitted to the EPA, MassDEP, or any town. Such documents shall be provided to CLF within 15 days after submittal to EPA, MassDEP, or any town.

8

23.    In the event that Defendants fail to comply with any of their obligations under this Section V, Defendants shall pay supplemental payments as outlined in Section VII: Supplemental Payments.

## VI.    ENVIRONMENTALLY BENEFICIAL PROJECT PAYMENT

24.    Defendants shall pay $485,000 to OARS, Inc. to implement an Environmentally Beneficial Project that will support a water quality and nutrient monitoring program. A description of the Environmentally Beneficial Project to be funded by Defendants is provided in Exhibit A.

25.    OARS, Inc. shall implement the Environmentally Beneficial Project pursuant to the terms provided in Exhibit A.

26.    Defendants shall pay $485,000 to OARS, Inc. within ninety (90) days of the Consent Decree's Effective Date.

27.    Payments made to the Environmentally Beneficial Project recipient, OARS, Inc., shall not be tax deductible by Defendants, any successors, assigns, parent companies, or affiliated entities.

28.    The EBP funds recipient, OARS, Inc., shall submit to CLF annual status reports, starting on the 1-year anniversary of Defendants' payment deadlines as referenced in paragraph 26 while the recipient spends such funds. The status report shall include:

a.    description of activities completed to date and related to the expenditures of funds; and

b.    a discussion of any anticipated changes to the scope or timeline of the Environmentally Beneficial Project.

9

## VII.    SUPPLEMENTAL PAYMENTS

29.    Defendants shall make supplemental payments as follows:

a.    Payments for exceedances of the NPDES Permit's numerical and non-numerical effluent limitations for each parameter (phosphorus, total suspended solids, pH, biochemical oxygen demand, temperature, and aluminum) at any Outfall: $2,500 per exceedance in the first calendar quarter following the Effective Date; and $3,750 per exceedance in any subsequent quarter during the term of this CD;

b.    Payments for leaving uncovered manufacturing materials or waste that can be exposed to precipitation or snowmelt (as determined by the monthly surveys): $2,000 per instance after the first instance per month in the first six months of the CD term; and $4,000 per instance after the first instance per month from six months of the Effective Date to the termination of this CD;

c.    Payments for each violation of the Permit other than an exceedance of the NPDES Permit's numerical and non-numerical effluent limitations at an Outfall as revealed by an inspection (either by CLF's representative or documented by Defendants): $2,000 per inspected violation in the first six months of the CD term; and $4,000 per inspected violation from six months of the Effective Date to the termination of this CD;

d.    Payments for each failure to timely comply with the monitoring and reporting requirements set forth in the NPDES Permit and this CD: $2,500 per failure to collect and report a sample per parameter;

e.    Payments for each failure to design and construct infrastructure improvements as necessary to achieve compliance with the NPDES Permit or Massachusetts Surface Water Quality Standards according to the schedule identified

10

above under Compliance Measures identified in Section IV: Compliance Measures above: $500 per day per missed deadline;

      f.      Payments for each failure to take and document corrective action after a stormwater effluent limitation violation: $500 per day per failure to take and document corrective action; and

      g.      Payments for failure to provide CLF in a timely manner with monthly and quarterly Discharge Monitoring Reports: $125 per day per missed deadline.

30.      These payments shall be paid to the Environmentally Beneficial Project recipient within 30 days of each missed deadline or submission to EPA and CLF of the Discharge Monitoring Report.

31.      Supplemental payments shall not be tax deductible by Defendants, any successors, assigns, parent companies, or affiliated entities.

## VIII.    COSTS OF LITIGATION

32.      Consistent with 33 U.S.C. § 1365(d), Defendants shall pay $100,000 to CLF within ninety (90) days of the Consent Decree's Effective Date, which shall fully and finally resolve all claims in the Action for attorneys' fees, costs, and/or other expenses.

33.      Payments made to CLF shall not be tax deductible by Defendants, any successors, assigns, parent companies, or affiliated entities.

## IX.    PRESS

34.      The Parties agree not to disparage one another concerning this Consent Decree in the press.

35.      CLF agrees that any press release related to the subject matter of this Consent Decree shall refer only to Patriot Beverages, LLC and CPF, Inc., and no other corporate entities.

## X. FORCE MAJEURE

36. Defendants shall perform the actions required by this Consent Decree within the time limits established therein, unless the performance is prevented or delayed by events that constitute a Force Majeure event.

37. "Force Majeure" is defined as any event arising from causes beyond the control of Defendants, their contractors, or any entity controlled by Defendants that causes a delay or impediment to performance in complying with any obligation under this Consent Decree despite Defendants' reasonable efforts to fulfill the obligation. Force Majeure events shall include, but are not limited to: war or violent uprising, acts of terrorism, natural disasters, labor strikes, transport delays, civil unrest, a declared state of emergency, public health concerns, and a declared pandemic and/or epidemic. An increase in costs, a change in financial circumstances, or Defendants' economic inability to comply are not Force Majeure events.

38. If any event occurs or has occurred that may delay or prevent compliance with the performance of any obligation under this Consent Decree, as to which Defendants intend to assert a claim as an event of Force Majeure, Defendants shall provide written notice to CLF of such claim, as soon as practicable but no later than thirty (30) days following the date Defendants first had notice that the claimed Force Majeure event may cause such delay or impediment and give rise to a claim of Force Majeure. Upon providing notice of Force Majeure, CLF shall have the right to request all necessary documentation explaining the potential delay. If requested, Defendants shall have ten business days from the date of the request to provide such documentation. If Defendants requests an extension of any deadline in this Consent Decree, CLF shall have the right to grant all or part of the extension request, in which case Defendants' time for performance of the obligations under this Consent Decree that are affected by the Force

Majeure will be extended as necessary to complete those obligations, or the obligations will be eliminated if performance is no longer possible. CLF will not unreasonably withhold or condition an extension, but in the event that CLF does withhold an extension, Defendants shall have the right to apply to the Court for an extension of time, but Defendants shall have the burden of proving to the Court that refusal by CLF to grant the requested extension was unreasonable based on the information then available to CLF. If the Court becomes involved in deciding whether CLF's decision to withhold an extension was reasonable, Defendants shall not be required to pay supplemental payments during the time between the date on which CLF receives such a request from Defendants for an extension of the deadlines and the date on which a final decision is issued regarding such request. If the Court's final decision denies Defendants' request for an extension, Defendants shall pay all supplemental payments that were deferred during the pendency of the decision on Defendants' request.

## XI. DISPUTE RESOLUTION

39.    If CLF has reason to believe that there is a violation of this Consent Decree, CLF may request that the Parties meet and confer for the purpose of determining whether a violation has occurred and developing a mutually agreed upon plan, including implementation dates, to resolve the dispute.

40.    The Parties agree to work together in good faith to resolve all disputes before bringing such disputes before this Court.

41.    If the Parties' meet and confer anticipated in paragraph 39 does not resolve the dispute and result in a mutually agreed upon plan or Defendants do not respond to CLF's request for a meet and confer within fourteen (14) days, CLF shall be entitled to bring the dispute before this Court for resolution.

13

42.     The Court shall retain jurisdiction over this case until the Termination Date to enforce or modify the terms and conditions of the Consent Decree, and to resolve any disputes arising hereunder.

## XII.     EFFECT OF SETTLEMENT

43.     Entry of this Consent Decree shall resolve any and all claims, causes of action, or liability arising under the CWA brought by CLF against Defendants for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief relating to the violations that were alleged, or could have been alleged, in the Complaint or in this action; CLF covenants not to sue, releases, and forever discharges Defendants, and any successors or assigns, from all such claims, causes of action, or liabilities arising on or before the Effective Date.

44.     CLF covenants not to sue and shall not bring any claim, cause of action, or suit against Defendants for any alleged violations of the same nature or type as those described in the Complaint that occurred prior to the Termination Date.  CLF's exclusive remedy for any such claims against Defendants, or other claims related to alleged violations of the CWA, arising after the Effective Date and prior to the Termination Date shall be through the supplemental payments described in this Consent Decree, subject to the outcome of any dispute resolution process.

45.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party that is not a party to this Consent Decree.

## XIII.     NOTICES

46.     Unless otherwise provided herein, whenever notifications, submissions, or communications are required by the Consent Decree, they shall be made in writing and addressed as follows:

14

For Plaintiff:
Ruby Verbitsky
Paralegal, Clean Air and Water
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110
Tel: 617-850-1731
rverbitsky@clf.org

For Defendants:
Patriot Beverages, LLC and CPF, Inc.
Attention: Dan Gray
25 Copeland Drive
Ayer, MA 01432

with a copy to:

Jessica A. Wall, Esq.
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
jwall@andersonkreiger.com

## XIV.    EFFECTIVE DATE & TERMINATION

47.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's Docket.  All obligations arising under the Consent Decree shall become effective as of the Effective Date.

48.    The Consent Decree shall terminate five (5) years after the Effective Date. The term of this Consent Decree begins on the Effective Date and ends on the Termination Date.

## XV.    MODIFICATION

49.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court. CLF's

15

decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XVI.    SIGNATORIES/SERVICE

50.    Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

## XVII.    INTEGRATION

51.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## XVIII.    FINAL JUDGMENT

52.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Plaintiff and Defendants.

**SIGNATURE PAGE**

**Conservation Law Foundation, Inc.**

By: _____          Date: _____09/19/2025_____

Heather A. Govern, Esq.
Vice President, Clean Air and Water
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110

**Patriot Beverages, LLC**

By: _____          Date: September _19_, 2025

Dan Gray, General Manager
Patriot Beverages, LLC
25 Copeland Drive
Ayer, MA 01432

**CPF, Inc.**

By: _____          Date: September _19_, 2025

Dan Gray, General Manager
CPF, Inc.
25 Copeland Drive
Ayer, MA 01432

Dated and entered this _10th_ day of _November_, 202_5_

_____
United States District Court Judge

17